IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

JONATHON ANDREW DUNN,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C14-4101

REPORT AND RECOMMENDATION

TABLE OF CONTENTS

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . 2

*III. PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV. FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A. Dunn's Education and Employment Background* . . . . . . . . . . . . . 5
    *B. Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . 5
        *1. Dunn's Testimony* . . . . . . . . . . . . . . . . . . . . . . . 5
        *2. Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . 6
    *C. Dunn's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . 7

*V. CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    *A. ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . 13
    *B. Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . 15
        *1. Medical Source Opinions* . . . . . . . . . . . . . . . . . . . 16
            *a. Dr. Brinck's Opinions* . . . . . . . . . . . . . . . . . 16
            *b. Dr. Baker's Opinions* . . . . . . . . . . . . . . . . . 19
        *2. Credibility Determination* . . . . . . . . . . . . . . . . . . . 22
        *3. Hypothetical Question* . . . . . . . . . . . . . . . . . . . . . 25

*VI. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*VII. RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Jonathon Andrew Dunn on November 14, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his Title XVI supplemental security income ("SSI") benefits. Dunn asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him SSI benefits. In the alternative, Dunn requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On February 28, 2011, Dunn applied for SSI benefits. In his application, Dunn alleged an inability to work since January 1, 2011 due to ADHD and bipolar disorder. Dunn's application was denied on April 27, 2011. On June 27, 2011, his application was denied on reconsideration. On December 17, 2012, Dunn appeared via video conference with his attorney before Administrative Law Judge ("ALJ") Dennis T. Bennett for an administrative hearing. At the hearing, ALJ Bennett continued the proceedings, and ordered psychological testing with a consultative examiner for Dunn. On June 20, 2013, a second administrative hearing was held via video conference before ALJ James D. Goodman.[1] Dunn and vocational expert Howard Goldfarb testified at the hearing. In a decision dated July 5, 2013, the ALJ denied Dunn's claim. The ALJ determined that Dunn was not disabled and not entitled to SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Dunn appealed the ALJ's decision. On September 15, 2014, the Appeals Council denied Dunn's

---

[1] According to the record, ALJ Bennett retired during the time period between the consultative examination and the second administrative hearing. The case was re-assigned to ALJ Goodman. *See* Administrative Record at 12. Additionally, Dunn and his attorney appeared at the second hearing from Sioux City, Iowa, while the ALJ presided from Pasadena, California. Dunn's attorney for both administrative hearings was attorney Al Sturgeon. Dunn's attorney for this appeal is attorney Jay Denne.

request for review. Consequently, the ALJ's July 5, 2013 decision was adopted as the Commissioner's final decision.

On November 14, 2014, Dunn filed this action for judicial review. The Commissioner filed an Answer on January 20, 2015. On March 9, 2015, Dunn filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On May 8, 2015, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On May 27, 2015, Dunn filed a reply brief. On May 28, 2015, Judge Mark W. Bennett referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial

evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV.  FACTS

### A.  Dunn's Education and Employment Background

Dunn was born in 1991.  He is a high school graduate.  In school, he was enrolled in special education classes.  In the past he worked as a concrete worker, mechanic, and construction worker.

### B.  Administrative Hearing Testimony

#### 1.  Dunn's Testimony

At the second administrative hearing, the ALJ asked Dunn why he believed he was unable to work.  Dunn replied that "I have a real hard time following direction and, you know, staying focused[.]"[2]

Dunn's attorney also questioned Dunn, and inquired about his mental health symptoms:

> Q:   . . . Do you have problems with mood swings?
> A:   Yes, I do.
> Q:   Do you have control over these mood swings?
> A:   Sometimes yes and sometimes no. . . .
> Q:   Okay.  Do you have problems completing tasks?
> A:   Yes, I do.
> Q:   Explain that.
> A:   Because I get, I get sidetracked really easily.
> Q:   Can you read and comprehend written instructions?
> A:   Not that well.

---

[2] Administrative Record at 50.

(Administrative Record at 58.) Dunn also testified that on a typical day, in the morning, he helps his mother watch children that she babysits, and in the afternoon, he spends his time at his uncle's house. Dunn further stated that he also watches television, but has difficulty staying focused for an entire show.

### 2. *Vocational Expert's Testimony*

At the second hearing, the ALJ provided vocational expert Howard Goldfarb with a hypothetical for an individual who has no exertional limitations and can:

> never perform complex, technical work, this person may perform a full range of simple, routing [(*sic*)] and repetitive work, however, in so doing he must be limited to frequent close attention to detail, he may have and exercise occasional independent judgment. This person may have only occasional contact with the public, only occasional contact with coworkers and supervisors. This person occasionally requires supervision in the performance of his job duties. This person also may exercise only frequent concentration in the performance of his work. This person also may only occasionally use voice or voice communications for oral communication, that is the expression of thoughts, understanding to [a] person who he might express ideas or other kinds of communication.

(Administrative Record at 63-64.) The vocational expert testified that under such limitations, Dunn could not perform his past relevant work, but could perform the following jobs: (1) yard worker, (2) polisher, and (3) light level production assembler.

Dunn's attorney also questioned the vocational expert:

> Q: Using the hypothetical . . . with the same criteria that the Judge previously described but adding that the individual may have occasional periodic periods of decompensation either because of mood swings or because of medication or other mental difficulties that would lead to an occasional absence. Would this individual still be employable in the fields of occupation that you previously described?

A:  Counsel, when we talk about absence can we be a little more specific in terms of during the workday first, and than [(sic)] as a monthly constituent.

Q:  Using the same hypothetical, perhaps maybe one to two hours a day or up to three, four days a month.

A:  Oh I see, okay. I would say this, that if this were to occur on shall we say ongoing basis, it would be what we would classify as inappropriate worker characteristics. It would be a significant diminution of productivity, and this person without significant accommodation would not be maintained in an employer/employee relationship.

(Administrative Record at 66.)

### C. Dunn's Medical History

On December 19, 2000, at age 9, Dunn began treatment with Dr. Ronald W. Brinck, M.D. At that time, Dunn's presenting problems were irritable temperament and behavioral problems. Specifically, Dunn's mother reported that Dunn's:

> temper will "snap[.]"[] He will go from being good to uncontrollable. He gets destructive and "you can't say anything right[.]"[] Sometimes he will take off when he is upset as long as one to two hours. . . . He seems stubborn. He has difficulty with transitions. . . . His sleep has been poor.

(Administrative Record at 282.) Dr. Brinck noted that at school, Dunn had difficulty with concentration. Dunn also had some suicidal ideation, stating that he wanted to "kill himself." Upon examination, Dr. Brinck noted that Dunn was inattentive, easily irritable, and restless. Dr. Brinck diagnosed Dunn with ADHD and major depressive disorder. Dr. Brinck prescribed medication as treatment.

On October 26, 2007, at age 16, Dunn met with Dr. Richard C. Brown, Jr., M.D., for a psychiatric evaluation. At the time of their meeting, Dr. Brown indicated that Dunn had recently been "stabilized" at Cherokee Mental Health Institute in early October, after

being transferred from Mercy Medical Center. Dunn was having trouble with extreme anger and "dyscontrol." Dr. Brown noted that:

> [Dunn] became very irritable at home, an argument ensued and he began punching holes in the walls. He became threatening, he threatened to burn the house down, and indicated that he "wanted to die[.]"[] The police were summoned and he was taken to Mercy Medical Center and transferred to the Cherokee Mental Health Institute.

(Administrative Record at 308.)

Dr. Brown also reviewed Dunn's long-term mental health history. Dr. Brown noted that Dr. Brinck had been treating Dunn for approximately seven years. Dr. Brown further noted that Dunn had been prescribed various medication as treatment. Dr. Brown indicated that:

> [Dunn] has a history of Mood Disorder, which is evident through periods of extreme anger and irritability. He becomes argumentative, aggressive, throwing things, being noncompliant and physically aggressive in the home. . . . He seems to have been resistant to taking his medication and was not taking it on a regular basis. As a result, there was an increase in irritability, a decline in his sleep patterns, . . . difficulty with sleep, and ultimately having behavioral difficulties, which led to him being placed in BD classes in the school setting.

(Administrative Record at 308.)

Upon examination, Dr. Brown diagnosed Dunn with bipolar disorder, ADHD by history, and oppositional defiant disorder. Dr. Brown placed Dunn in a group home treatment program. Dunn was discharged from the program on May 5, 2008, where he worked on methods to control his anger, have better interaction with peers and family, and techniques to calm himself down. Dr. Brown recommended that Dunn continue treatment and medication management with Dr. Brinck, and counseling through Siouxland Mental Health.

On April 27, 2011, Dr. L. Leaf, Ph.D., reviewed Dunn's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Dunn. On the Psychiatric Review Technique assessment, Dr. Leaf diagnosed Dunn with ADHD, bipolar disorder, and anxiety. Dr. Leaf determined that Dunn had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Leaf determined that Dunn was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, work in coordination or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Leaf concluded that Dunn "has severe mental [medically determinable impairments] consistent with the limitations noted on the PRTF/MRFC. From a mental perspective, [Dunn] is able to perform simple work type activity on a routine basis. He would do best with limited social interaction and a low stress environment."[3]

On August 17, 2011, Dunn met with Dr. Brinck for medication management. Dunn reported taking his medications regularly and feeling more sociable. His mother felt that Dunn was getting more irritable, and he continued to have difficulty sleeping. Upon

_____

[3] Administrative Record at 288.

examination, Dr. Brinck noted a depressed mood, and diagnosed Dunn with anxiety disorder, ADHD, and bipolar disorder. Dr. Brinck opined that all three diagnoses were "improving." Dr. Brinck continued to treat Dunn with medication. Dr. Brinck concluded that:

> It seems clear that [Dunn] is disabled from his mental illness. In high school he required substantial accommodations beginning in early elementary school with BD classroom placement, with variable success. He has had very aggressive medication management for over 10 years, with only limited benefit. Since high school[, Dunn] has been repeatedly unable to maintain gainful employment. After high school he had training in Welding in Automotive at Job Corps. He struggled in Job Corps as well, although this was not behaviorally related. Given his history I do not feel he would be able to maintain gainful employment for the foreseeable future.

(Administrative Record at 503.)

On March 19, 2012, Dunn returned to Dr. Brinck for routine medication management. Dunn reported that he was "doing alright," but indicated he was having trouble sleeping. Upon examination, Dr. Brinck noted a depressed mood. Dr. Brinck noted improvement with Dunn's anxiety disorder, ADHD, and bipolar disorder. Dr. Brinck also diagnosed Dunn with uncontrolled adult stuttering. Dr. Brinck continued to treat Dunn with medication. Again, Dr. Brinck drew the exact same conclusions, and reiterated them verbatim:

> It seems clear that [Dunn] is disabled from his mental illness. In high school he required substantial accommodations beginning in early elementary school with BD classroom placement, with variable success. He has had very aggressive medication management for over 10 years, with only limited benefit. Since high school[, Dunn] has been repeatedly unable to maintain gainful employment. After high school he had training in Welding in Automotive at Job Corps. He struggled in Job Corps as well, although this was not behaviorally

related. Given his history I do not feel he would be able to
maintain gainful employment for the foreseeable future.

(Administrative Record at 350.)

On January 17, 2013, at the request of DDS, Dunn met with Dr. Michael P. Baker,
Ph.D., for a disability determination report. By way of background, Dr. Baker noted that
Dunn was applying for disability benefits due to mental illness, particularly having a short
temper, sleeping problems, and getting frustrated easily. Dr. Baker also noted that Dunn
takes various medications for his symptoms. Dr. Baker reviewed Dunn's mental health
history as follows:

> He was last involved with a therapist about June of 2012. He
> had seen Diane Sawenson, LISW for about one year. In the
> past he had also seen Dr. Sanchez as a therapist. He has been
> in counseling since being a younger child. He was placed at
> Cherokee Mental Health Institute about five times, the last
> time being about at age 16. He was at Boys and Girls Home
> of Family Services for an extended stay one time. He was
> most recently admitted to Mercy Medical Center for "anger
> problem[.]"[] He stated "I was going to see how I did without
> the pill since I've taken them all my life. I lost control. Now
> I'm taking them like I'm suppose to[.]"[]

(Administrative Record at 642.) In reviewing Dunn's daily activities, Dr. Baker indicated
Dunn can cook, do his own laundry, drive, and care for himself. He needs assistance with
grocery shopping and dislikes social interaction outside his family. Dr. Baker also noted
that Dunn spends a lot of time with his uncle helping him with various chores and errands.
Upon examination, Dr. Baker diagnosed Dunn with bipolar disorder, anxiety disorder, and
ADHD. Dr. Baker opined that:

> In regards to mental limitations related to work activities,
> Mr. Dunn is an individual with chronic mental health
> difficulties. His ability to actually remember and understand
> non-complex tasks is probably fair in regards to instructions,
> procedures, and locations. His maintenance of attention,
> concentration and pace, however, for carrying out instructions

would be quite poor. Particularly, this would be worsened by the stress of interacting. Not only [does] he [have] reactive emotionality, but additionally the stuttering, attentional deficit, and intellectual deficits combine to affect appropriate dealings with supervisor, co-workers and the public. His use of good judgment and responding appropriately to changes in the work place will also be based on how severe perceived social stressors are.

(Administrative Record at 644.)

On January 22, 2013, Dr. Baker filled out an additional medical source statement regarding Dunn's ability to perform work-related activities. Dr. Baker opined that Dunn would have "marked" limitations in understanding and remembering complex instructions, carrying out complex instructions, and making judgments on complex work-related decisions. Dr. Baker explained that these activities would have marked limitations due to Dunn's combined mental health illness, borderline intellectual functioning, stuttering, and low frustration tolerance. Dr. Baker further opined that Dunn would have "moderate" limitations with interacting appropriately with the public, supervisors, and co-workers, and responding appropriately to changes in routine work settings. Dr. Baker identified emotional difficulties as a significant factor for limiting his ability to interact appropriately with others in an employment setting.

On May 14, 2013, Dunn met with Dr. Brinck for medication management. Upon examination, Dr. Brinck diagnosed Dunn with ADHD, anxiety disorder, bipolar disorder, and stuttering. Dr. Brinck indicated that Dunn's problems with ADHD, anxiety disorder, and bipolar disorder were "improving." Nevertheless, Dr. Brinck reiterated his exact same opinion from August 17, 2011 and March 19, 2012, "[i]t seems clear that [Dunn] is disabled from his mental illness."[4] Dr. Brinck noted that Dunn had been treated with medication for over 10 years with only limited benefits. Dr. Brinck concluded that

---

[4] Administrative Record at 663.

"[g]iven his history, I do not feel [Dunn] would be able to maintain gainful employment for the foreseeable future."[5]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Dunn is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the

---

[5] *Id.* at 664.

impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Dunn had not engaged in substantial gainful activity since February 28, 2011. At the second step, the ALJ concluded from the medical evidence that Dunn has the following severe impairments: bipolar disorder, ADHD, anxiety disorder, phonological disorder, and adult stuttering.

At the third step, the ALJ found that Dunn did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Dunn's RFC as follows:

> [Dunn] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Dunn] can never perform complex, technical work. He may perform a full range of simple, repetitive work. [Dunn] must be limited to frequent close attention to detail. [He] may exercise occasional independent judgment. [He] may have occasional contact with the public, coworkers, and supervisors. [Dunn] occasionally requires supervision in the performance of his job duties. [He] may exercise frequent concentration in performing work. [Dunn] also may occasionally use voice or voice communications for oral communication (such as expression of thoughts, which can be understood by those individuals to whom he might express ideas or other types of communication).

(Administrative Record at 18.) Also at the fourth step, the ALJ determined that Dunn was unable to perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Dunn could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Dunn was not disabled.

### B. Objections Raised By Claimant

Dunn argues that the ALJ erred in three respects. First, Dunn argues that the ALJ failed to properly evaluate the opinions of both his treating psychiatrist, Dr. Brinck, and consultative examining source, Dr. Baker. Second, Dunn argues that the ALJ failed to properly evaluate his subjective allegations of disability. Lastly, Dunn argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

## 1. Medical Source Opinions

### a. Dr. Brinck's Opinions

Dunn argues that the ALJ failed to properly evaluate the opinions of his treating psychiatrist, Dr. Brinck. Specifically, Dunn argues that the ALJ failed to properly weigh Dr. Brinck's opinions. Dunn also argues that the ALJ's reasons for discounting Dr. Brinck's opinions are not supported by substantial evidence in the record. Dunn concludes that this matter should be remanded for further consideration of Dr. Brinck's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by

superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also Cline v. Colvin*, 771 F.3d 1098, 1105 (8th Cir. 2014) ("[L]ess weight may be given to the treating physician's opinion, but the ALJ must always 'give good reasons' for doing so. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (quoting 20 C.F.R. § 404.1527(c)(2)).""). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed Dr. Brinck's opinions as follows:

> I further considered the 2011, 2012, and January 2013 assessments of treating source Dr. Brinck who asserted that [Dunn] was disabled (Exhibit 8F; Exhibit 16F; Exhibit 22F). Ordinarily, the opinion of a treating source is entitled to special weight. However, I give these assessments little

weight, as the record is not consistent with finding [Dunn] disabled. Moreover, the Regulations state that a medical opinion should be "complete and detailed enough for us to make a determination or decision about whether you are disabled or blind" (20 CFR 416.913(e)). For example, a complete opinion would address the nature and severity of impairments, whether the impairments met the durational requirement, and the claimant's residual functional capacity (*Id.*). Further, Dr. Brinck offered no objective evidence in support of his assessments. Dr. Brinck's evaluations do not rise to the level of a medical opinion.

(Administrative Record at 19.)

Here, having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Brinck. The Court also finds that the ALJ provided "good reasons" for affording only "little" weight to Dr. Brinck's opinions. *See* 20 C.F.R. § 404.1527(c)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. For example, in his decision, the ALJ reviewed Dunn's medical records from 2011 through 2013 and discussed inconsistencies in that evidence with a finding of disability.[6] The ALJ also correctly pointed out that Dr. Brinck's treatment notes do not discuss the severity of Dunn's impairments, and do not provide a residual functional capacity assessment for Dunn. Instead, Dr. Brinck's treatment notes from 2011 through 2013 consistently diagnosed Dunn with anxiety disorder, ADHD, and bipolar disorder, which were all found to be "improving."[7] Furthermore, on several of the treatment notes, Dr. Brinck inserted the exact same paragraph opining that Dunn is disabled. Specifically, Dr. Brinck repeatedly opined verbatim:

> It seems clear that [Dunn] is disabled from his mental illness. In high school he required substantial accommodations beginning in early elementary school with BD classroom

---

[6] *See* Administrative Record at 18-19.

[7] *Id.* at 471-511; 661-670.

placement, with variable success. He has had very aggressive medication management for over 10 years, with only limited benefit. Since high school[, Dunn] has been repeatedly unable to maintain gainful employment. After high school he had training in Welding in Automotive at Job Corps. He struggled in Job Corps as well, although this was not behaviorally related. Given his history I do not feel he would be able to maintain gainful employment for the foreseeable future.

(Administrative Record at 503.) As the ALJ correctly points out, Dr. Brinck offers "no objective evidence in support of his assessments."[8] Moreover, while Dunn addresses GAF scores in his brief, Dr. Brinck did not assess any GAF scores for Dunn until March and May 2013, where he assessed GAF scores of 60 for Dunn.[9] A GAF score of 51 to 60 is "indicative of 'moderate symptoms' or 'moderate difficulty in social, occupational, or school functioning.'" *Lacroix v. Barnhart*, 465 F.3d 881, 883 (8th Cir. 2006). Accordingly, the Court determines that the ALJ properly addressed and evaluated Dr. Brinck's opinions, and explained his reason for granting only "little" weight to those opinions. *Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### b. Dr. Baker's Opinions

Dunn argues that the ALJ failed to properly evaluate the opinions of his consultative examining source, Dr. Baker. Specifically, Dunn argues that the ALJ's reasons for

---

[8] Administrative Record at 19.

[9] *Id.* at 663; 666.

discounting Dr. Baker's opinions are not supported by substantial evidence on the record. Dunn concludes that the ALJ's failure to credit the opinions of Dr. Baker is error.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In his decision, the ALJ addressed the opinions of Dr. Baker:

> In reaching the residual functional capacity, I considered the residual functional capacity on the January 2013 opinion of consultative examiner Michael Baker, Ph.D., who opined that [Dunn] had a fair ability to remember and understand non-complex tasks, a poor ability to maint[ain] [] attention, concentration, and pace, a reduced ability to appropriately deal with supervisors, coworkers, and the public, and an ability to use judgment and respond appropriately to changes in the workplace based on the level of social stressors (Exhibit 20F, p. 8). I give some weight to the consultative examiner's opinion, as it is somewhat consistent with the consultant's assessment and the record as a whole, although it provides little specifics on [Dunn's] mental functional abilities.
>
> In addition, Dr. Baker's examination results support the above mental restrictions. Dr. Baker did note that [Dunn] had stuttering problems, a somewhat argumentative manner of interacting possibly related to his stuttering, no abstraction ability, a history of suicidal ideation, a history of manic and depressive episodes, poor concentration, and limited judgment

and insight, with a GAF of 40 (Exhibit 20F, pp. 3, 4). Yet, Dr. Baker also reported that [Dunn] had full cooperation, good eye contact, a goal oriented thought process, good recall and memory (recalled four items after four minutes), an average fund of knowledge, fair but minimal judgment, an appropriate affect, no recent suicidal ideation, no hallucinatory activities or other psychotic tendencies, no delusional thoughts, and full alertness and orientation (Exhibit 20F, p. 3).

(Administrative Record at 19.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Baker. Specifically, the ALJ granted Dr. Baker's opinions "some" weight, and addressed inconsistencies within Dr. Baker's opinions and the record as a whole.

As for Dunn's argument regarding Dr. Baker's GAF score of 40, Dunn fails to present evidence of consistent low GAF scores from treating sources. In fact, Dr. Brinck, Dunn's long-time treating psychiatrist, did not assess any GAF scores for Dunn in 2011 or 2012. In March and May 2013, Dr. Brinck assessed Dunn with a GAF score of 60. A GAF score of 51 to 60 is "indicative of 'moderate symptoms' or 'moderate difficulty in social, occupational, or school functioning.'" *Lacroix v. Barnhart*, 465 F.3d 881, 883 (8th Cir. 2006). The Court determines that Dunn's argument that ALJ's decision is flawed because Dr. Baker assessed a GAF score of 40 is without merit.

In conclusion, the Court finds that the ALJ properly considered and applied the factors for evaluating a consultative examiner's opinions, and properly granted "some" weight to Dr. Baker's opinions. *See Wiese*, 552 F.3d at 731. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 2. *Credibility Determination*

Dunn argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Dunn maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Dunn's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski

factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003).""). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

      In his decision, the ALJ addressed Dunn's credibility as follows:

> After careful consideration of the evidence, I find that [Dunn's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Dunn's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> I am fully cognizant of the fact that [Dunn] alleges greater mental limitations than I allowed for in this residual functional capacity. [Dunn] alleges that he has problems focusing, completing tasks, understanding instructions, getting along with others, and controlling his anger and mood swings[.] . . . [Dunn] also alleges having problems talking[.] . . .

In accordance with Social Security Ruling 96-7p, I have evaluated [Dunn's] allegations and have found them less than fully credible. Specifically, with regard to [Dunn's] alleged talking problems, I included a mental limitation that accounts for this problem, by limiting him to occasionally using voice or voice communications for oral communication. The treatment record fails to support including additional, speaking related limitations, in the residual functional capacity.

The objective evidence does not support [Dunn's] allegations. As discussed above, there is simply not enough evidence of debilitating impairments to make the allegations readily believable. Indeed, the findings of the consultative examiners support the residual functional capacity.

In addition, [Dunn's] treatment records as a whole undermine his allegations. [He] was prescribed medication to treat his mental impairments, including Paxil, Risperdal, and Wellbutrin (Exhibit 8F, p. 9). He also received mental health treatment in 2011, 2012, and 2013, and [he] testified he was involuntarily hospitalized in February 2011 (Exhibit 1F, p. 4). Yet, as discussed above, the record includes notes that consistent[ly] characterize [his] mental impairments as "improving" (*See* Exhibit 8F, 12F, and 16F). The treatment notes, thus, suggest that [Dunn] is not as limited as he alleges.

[Dunn's] activities of daily living are also not consistent with the alleged degree of impairment. [His] activities tend to show that he has the ability to perform work. [Dunn] testified that he helps his mother with babysitting. [He] also reported that he prepares simple meals and that he performs activities of personal care without assistance (Exhibits 3E, 7E, 9E, and 20F). He further reported that he mows, cleans, washes clothes, washes dishes, and repairs the house, and that he drives a car and shops in stores (Exhibits 7E, 9E, and 20F). In addition, [he] reported that he spends time at his uncle's house and that he fixes cars (Exhibit 7E). [Dunn's] activities suggest that [he] has a better mental capacity than he has stated in the record.

> Accordingly, I have given [Dunn's] allegations of disabling symptoms little weight. I find that [Dunn] does not have limitations beyond those stated in the residual functional capacity assessment I stated above.

(Administrative Record at 20-21.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Dunn's treatment history, medical evidence, functional restrictions, activities of daily living, and use of medications in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Dunn's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Dunn's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3.   *Hypothetical Question*

Dunn argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments. Dunn also argues that the ALJ's hypothetical did not contemplate all of his functional limitations. Dunn maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Dunn's testimony in determining Dunn's impairments and functional limitations.[10] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## VI.  CONCLUSION

I find that the ALJ properly considered and weighed the opinions of Dr. Brinck and Dr. Baker, properly determined Dunn's credibility with regard to his subjective complaints of disability, and provided the vocational expert with a hypothetical question that properly

_____

[10] *See* Administrative Record at 18-21.

included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, I believe the ALJ's decision is supported by substantial evidence and should be affirmed.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **AFFIRM** the final decision of the Commissioner of Social Security and **DISMISS** with prejudice Plaintiff's Complaint (docket number 3) filed on November 14, 2014.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 27th day of _____ August _____, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA